415 So.2d 912 (1981)
STATE of Louisiana
v.
Gerald A. BOSWORTH.
No. 80-KA-1619.
Supreme Court of Louisiana.
September 28, 1981.
On Rehearing June 11, 1982.
*913 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-appellee.
Robert Glass, and John Wilson Reed, of Glass & Reed, New Orleans, Tom Collins, New Orleans, of Louisiana State Bar Ass'n, for defendant-appellant.
KLEES, Justice Ad Hoc.[*]
Defendant Gerald Bosworth was indicted by the grand jury of Terrebonne Parish on January 12, 1977, with two counts of contributing to the delinquency of a juvenile, in violation of R.S. 14:92 A(9). On August 24, 1977, after an initial plea of not guilty, the defendant pled guilty to one count and the prosecution subsequently dismissed the other. On the date set for sentencing, the defense filed a motion for production of the presentence investigation report which was denied after oral argument. Application was made for supervisory writs and on June 19, 1978, this Court ordered disclosure of the report.[1]
After a sentencing hearing, the defendant was sentenced to one year imprisonment at hard labor. The defendant appealed, arguing that the offense was a misdemeanor and not a felony. On June 25, 1979, this Court set aside the sentence and remanded the case for resentencing.[2]
On remand, the defendant filed a motion to withdraw his guilty plea and a supplemental motion to withdraw his guilty plea. An evidentiary hearing was conducted and both motions were denied. Contemporaneously, the defendant filed a motion to recuse the trial judge. The motion to recuse was heard and denied; writs to this Court were also denied.[3] After denying a renewed motion for probation, the trial court sentenced defendant to imprisonment for one year in the parish prison.[4] Defendant appealed to this Court. After the appeals record was lodged with this Court defendant filed with the trial court a petition for a writ of habeas corpus on the grounds that his plea of guilty had not been knowingly and voluntarily entered. Pursuant to an interim order by this Court dated September 12, 1980, an evidentiary hearing on the petition for a writ of habeas corpus was conducted by the trial court, at the conclusion of which the trial judge denied relief. Defendant then filed a second notice of appeal and a supplemental specification of error. The appeals are now before this Court on consolidated specifications of error.

*914 ASSIGNMENTS OF ERROR NOS. 1, 2, and 3
By these assignments of error the defendant urges that the trial court erred in denying his motions to withdraw the guilty plea on the grounds: (1) the state breached a plea bargain agreement; (2) there was an improper "Boykin ization" of the defendant which made his guilty plea constitutionally unknowing; and (3) the defendant's attorney at the time of the guilty plea operated under a conflict of interest which was not disclosed to the defendant.
The Plea Bargain Agreement
The defendant maintains that his guilty plea was the product of a negotiated plea bargain between his former lawyer and the state. He alleges that the state obligated itself first, to dismiss an additional charge against him and second, to recommend a suspended sentence to the trial judge. He contends that the presentence investigation report reveals that the state failed to comply with the latterpart of the agreement.
The state asserts that neither the District Attorney not any member of his staff agreed to recommend a suspended sentence to the trial judge.
The motion to withdraw the guilty plea based on the "breached plea bargain agreement" was filed on April 18, 1980. After an evidentiary hearing, the trial judge denied the motion.
During cross examination by the state at a January 18, 1980 hearing, the defendant testified that he believed that he was going to get a suspended sentence based on representations made to him by his attorney. He stated that he had answered in the negative when asked whether he had been promised anything during his "Boykin ization" merely because that was his understanding of how the district attorney operates on plea bargaining. The defendant's former attorney, Edward James Gaidry, testified for the state at the hearing. On cross-examination by the defense, he testified that both he and defendant were hopeful that he would receive a suspended sentence based on conversations that he had with both the district attorney and the trial court and on information which he would later supply to the court. When asked by defense counsel whether the district attorney had represented to him that he would recommend probation to the trial judge, Mr. Gaidry responded, "As set forth in my letter, I said to the best of my knowledge, `it's my understanding that Mr. Rhodes would recommended a suspended sentence'."
However, the defense points out, it is well established that whenever a guilty plea rests in any significant degree on an agreement or promise by the prosecutor, so that it can be viewed as part of the inducement or consideration, such promise must be fulfilled or the defendant given an opportunity to withdraw the plea. Santobello v. New York, 404 U.S. 257, at 264, 92 S.Ct. 495, at 499, 30 L.Ed.2d 427, State v. Neitte, 363 So.2d 425 (La.1978).
In Santobello, supra, the prosecution following defendant's negotiated plea, recommended a greater sentence than agreed upon in the plea bargain. The Supreme Court of the United States reasoned that the defendant was entitled to relief in "[t]he interest of justice and appropriate recognition of the duties of the prosecutor in relation to promises made in the negotiation of pleas of guilty." 404 U.S. at 264, 92 S.Ct. at 499.
The state's failure to comply with a material representation or promise which induced defendant's guilty plea results in a denial of due process. State v. Neitte, supra. In Neitte, the District Attorney admitted that he had entered into a plea bargaining agreement with defendant. After he did not fulfill his part agreement, he argued that it was merely "conditional, unconfirmed". On appeal, this Court held that the defendant had entered a guilty plea based upon the District Attorney's promise or representation to him. Finding that the uncontroverted agreement had been breached, the case was remanded to allow the defendant to reinstate his guilty plea. Neitte, supra, 363 So.2d at 426-27.
Here, the state argues that no agreement ever existed and the defendant was merely *915 "mistaken or hopeful" of a suspended sentence and that, therefore, the trial court's ruling should be affirmed. It cites the case State v. Lockwood, 399 So.2d 190 (La.1981) as authority for its position. In State v. Lockwood, supra, the defendant never contended that a plea bargain was entered into or that a promise had been made. Moreover, this Court found nothing in the record or defendant's brief, to establish that defense counsel should have reasonably inferred that he would receive a suspended sentence. Defendant's argument was only that he should be allowed to plead anew because he believe that he would receive a suspended sentence when he entered his guilty plea. Based on those facts this Court held that "a misunderstanding does not have the same implication that a breached plea bargain had," and the trial judge had not abused its discretion.
Here, this court finds nothing in the record to establish that defendant should have reasonably inferred that he would receive a suspended sentence and we can find no error in the trial court's determination that there was no such plea bargain.

ASSIGNMENT OF ERROR NO. 2
Defendant urges that the trial court was in error in failing to set aside his plea of guilty on the grounds that the record of the plea proceeding did not affirmatively and independently establish that he had made a knowing and voluntary waiver of his privilege against self-incrimination.[5]
The defense argues that the failure of the trial judge to aver to the privilege against self-incrimination in his plea colloquy with the defendant renders the plea fatally defective regardless of whether the offense is considered a felony or a misdemeanor. During the colloquy between defendant and the trial court the only statement which could be interpreted as a reference to the privilege against self-incrimination as follows:
BY THE COURT: Do you understand that you have a right to present your side of the case, if you desire?
BY MR. BOSWORTH: Yes, sir.
As stated above, at the time of the instant offense, R.S. 14:92 had been construed as defining a relative felony punishable by up to two years' imprisonment and a fine of not more than $1,000.00. State v. Elias, 357 So.2d 275 (La.1978); State v. Seals, 343 So.2d 717 (La.1977). However, this court, in an earlier appeal by the defendant herein, overruled Elias and Seals, and held that the offense of contributing to the delinquency of a minor must be given misdemeanor status. State v. Bosworth, supra 373 So.2d at 155.[6]
The state urges that since the offense has been classified as a misdemeanor, defendant need not have been "Boykin ized" at the time he pleaded guilty. It also argues that, while the trial judge did not specifically use the words "privilege against self-incrimination" his question to the defendant was more than adequate to determine if defendant, who was an attorney engaged in the active practice of law, fully understood his rights.
In his oral reasons in denying the motion to withdraw, the trial judge concentrated on the issue of whether "Boykin ization" was required in misdemeanor cases and whether the defendant's plea was knowing and voluntary. He concluded that the guilty plea was voluntary and entered by defendant with a full understanding of his rights, and that Boykin ization was not required when a defendant pleads guilty to a misdemeanor. State v. Dunn, 390 So.2d 525 (La.1980).
Under the limited facts and circumstances of this case, we conclude that defendant, a practicing attorney, accompanied by his *916 defense counsel, a former assistant district attorney, knowingly and voluntarily entered a plea of guilty and find no merit in this specification of error.

ASSIGNMENT OF ERROR NO. 3
By this assignment the defense contends that the trial court abused its discretion in denying the defendant's motion to withdraw his guilty plea based on the former defense counsel's failure to disclose to his client a conflict of interest arising from counsel's representation of an immunized prosecution witness.
On January 18, 1977, approximately six days prior to the grand jury indictment of defendant, David Thomas was supoenaed to appear before the grand jury of Terrebonne Parish in connection with his participation in the crime for which the defendant was subsequently indicted. Thomas sought the services of James Gaidry who was retained as his attorney. Gaidry sought and received immunity from prosecution for Thomas, through an agreement with the district attorney's office. By the terms of that agreement, Thomas testified in the grand jury proceedings,[7] and according to the defense, further agreed to testify against defendant in the event the case went to trial. Less than two months later, in March, 1977, the defendant retained Gaidry for the purpose of securing his services as counsel in the present case for a fee. Gaidry accepted the employment without making a disclosure to defendant of his representation of Thomas.
As stated above, prior to re-sentencing, the defendant filed the motion to withdraw his guilty plea based on the alleged conflict of interest. An evidentiary hearing was conducted on the motion to withdraw the guilty plea. The motion was denied.
In denying the motion, the trial judge found that there was no evidence upon which the court could conclude that Gaidry was aware the witness had given testimony or furnished evidence to the grand jury concerning the defendant. He further stated that the fact that Gaidry represented the witness, who claims he gave testimony and evidence before the grand jury against the defendant, standing alone does not demonstrate a conflict of interest or impediment to his proper representation of defendant.
The right to every criminal defendant to have the effective assistance of an attorney during the proceedings against him is the cornerstone of our legal system. Amendment 6, U.S. Constitution, La.Const. (1974) Art. I, Section 13; Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). As a general rule, this Court has held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he is representing. State v. Franklin, 400 So.2d 616 (La. 1981).
In the instant case, in order for there to have been an actual conflict of interest requiring a reversal, Gaidry would have had to have knowledge of an agreement with the state whereby Thomas would testify before the grand jury and at the subsequent trial against defendant.
The trial court found that Gaidry represented Thomas for the sole purpose of obtaining immunity and that there was not evidence Gaidry knew of any implication of defendant. Although he found that Gaidry was able to get immunity for Thomas as consequence of a conference with the district attorney, he made no finding as to the terms of an agreement. The trial court concluded, however, that he did not believe that a conflict of interest exists.
This court agrees and concludes that the trial court correctly evaluated the testimony, and that an "Actual Conflict" did not exist and defendant is not entitled to relief.

*917 ASSIGNMENT OF ERROR NO. 4
By this agreement the defendant urges that the trial court committed error in imposing a constitutionally excessive sentence of one year in the parish prison for this first offense misdemeanor.
At the time of its commission, the offense of contributing to the delinquency of a minor was punishable by not more than two years imprisonment or a fine of not more than $1,000.00 or both. La.R.S. 14:92(C)[8]. The defendant was sentenced to one year.
This court has held that imposition of a sentence even within statutory limits may violate defendant's rights under the Louisiana Constitution against excessive punishment. Thus, it has been determined that excessiveness of sentence poses a question of law reviewable by this Court under its appellate jurisdiction. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Spencer, 374 So.2d 1195 (La.1979). However, the trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Sepulvado, supra.
Sepulvado further states that adequate review mandates that the trial judge state specific reasons for an apparently severe sentence in relation to the particular offender and the actual offense. The trial judge's reasons for imposing sentence as required by La.C.Cr.P. Art. 894.1 are an essential aid to this Court when reviewing for a sentence for excessiveness and abuse of discretion. State v. Spencer, supra.
Article 894.1 provides:
A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and
(3) A lessor sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation.
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitude of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and

*918 (11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall stated for the record the consideration taken into account and the factual basis therefor in imposing sentence.
In a second sentencing statement, filed in the record on May 16, 1980, the trial judge, relying primarily upon the presentence investigation report and the investigative report made by special agents for the Drug Enforcement Administration of the United States Department of Justice, sentenced the defendant to one year in the parish jail.
The trial judge listed the mitigating grounds found in 894.1(B) and stated his reasons and findings applicable to each ground. He stated that the defendant, an experienced lawyer, was well aware of the seriousness of what he was doing in giving illegal drugs to minors, and that the giving of marijuana, amphetamines, hashish oil, as well as offers of cocaine can fairly be characterized as serious. He found that the record had not convinced him that defendant was provoked and that there were no grounds whatsoever that would excuse or justify what defendant had done. In reference to the report of Dr. Charles Billings a certified psychiatrist, the trial judge referred to his first sentencing statement and concluded that the defendant's alleged impairment of judgment, assuming he had any, is no defense or justification for his actions. Although finding that the defendant should be given credit for not having a prior criminal record, he noted that defendant's admission of his engagement in the extensive use of illegal drugs over a long period of time established that defendant did have a history of criminal activity. He also stated that imprisonment would work a hardship on defendant and his dependents, and that the defendant had shown remorse for his conduct, but based on his past record of drug abuse and lack of concern for the law, probation would not be a proper sentence. The trial judge concluded that a lessor sentence than the one imposed would deprecate the seriousness of defendant's crime.
The pre-sentence investigation report reveals that defendant is 34 years old, legally separated, and the father of two children. Defendant has legal custody of his 11 year old son and his wife has legal custody of their 13 year old daughter, both children have been in the physical custody of the mother since the indictment. The defendant is a 1970 graduate of the Tulane Law School and has been licensed to practice in Houma, Louisiana, for seven years. The defendant is a first offender who entered De Paul's Hospital on January 20, 1977 where he underwent treatment by Dr. Charles K. Billings of Ochsner Clinic, New Orleans, Louisiana for approximately six weeks. At the time of Dr. Billings' statement to the probation and parole agent, defendant was still seeing him on a monthly basis, but he was considering releasing defendant from a regular treatment period. The defendant had first offered victim drugs when she was in the 8th grade. She also stated that at the same time he attempted, unsuccessfully, to have sexual relations with her. She stated that she began working at his law office on a part time basis after school when she was in the eleventh grade and during this time defendant continuously provided her with drugs. She informed the special agents for the Federal Bureau of Investigation that she used marijuana or a mixture of marijuana and hashish three or four times a week, either in defendant's office, or in his car when he would drive her home from work. He also supplied her with marijuana, hashish, hashish oil, amphetamines, and on two occasions offered her cocaine which she refused.
Amy Cipolla, another minor, stated that defendant had offered her and Monica Gray marijuana which they accepted and smoked with him in his office. She also stated that she received speed (amphetamines) from defendant through Monica Gray on several occasions during the summer of 1976.
This court has consistently held that if the trial court has stated the factual basis and individual consideration on which the sentence is based, then review will focus *919 upon whether the trial court has abused its large discretion. State v. Cox, 369 So.2d 118, 121 (La.1979), State v. Spencer, supra, 374 So.2d at 1202.
Defendant Bosworth has pled guilty to the offense[9] of contributing to the delinquency of a juvenilein this case his 16 year old niece. Defendant admitted taking amphetamines, percodan, downers, and cocaine. His statement that Monica Gray, the victim, had been taking drugs since she was 13, does not justify his actions in giving her drugs. Moreover, she testified that the defendant gave her drugs at approximately age 13. In light of the circumstances, more than adequate reasons were given for sentencing and the one year sentence imposed was not an abuse of the trial court's discretion.
Nonetheless, according to the indictment, the offense to which Bosworth pled guilty occurred somewhere between July 1, 1976 and July 25, 1976.
On July 11, 1976, the governor signed the previously passed Acts 1976, No. 121 which reduced the penalty to a maximum of six months imprisonment and a fine of $500.00.[10]
As a matter of basic fairness, it seems self-evident that, absent some special circumstances, a sentencing court should give great weight to a legislative reduction of penalties that pre-dates the offense. In its decisions, this court has implied that sort of consideration. State v. Wright, 384 So.2d 399 (La.1980); State v. Doxey, 384 So.2d 402 (La.1980); State v. Clark, 391 So.2d 1174 (La.1980).
For the reasons assigned the defendant's conviction is affirmed; the sentence is vacated and set aside and the case is remanded to the district court for re-sentencing of defendant consistent with the views expressed herein.
GUIDRY, J., ad hoc, concurs.
SWIFT, J., ad hoc, concurs in the result.
LEMMON, J., concurs in affirming the conviction and dissenting from setting aside the sentence and assigns reasons.
WATSON, J., dissents as to Assignment of Error # 1.
LEMMON, Justice, concurring in the affirmance of the conviction and dissenting in the setting aside of sentence.
I concur in affirming the conviction, although the motion to withdraw the guilty plea because of defendant's former attorney's conflict of interest presents a weighty problem.
Defendant's former attorney, who counseled him at the time of his guilty plea, had previously represented the witness who testified against plaintiff before the grand jury pursuant to a grant of immunity obtained by that attorney. The immunized witness testified that he obtained immunity in exchange for an agreement to testify against defendant before the grand jury and at trial. The attorney admitted that the agreement included the witness' commitment to testify before the grand jury and did not deny the agreement included trial testimony, but simply stated he didn't recall.
The attorney probably could not have fairly represented his client at trial.[1] Under those circumstances it is arguable that if the attorney had not advised the client to *920 plead guilty in order to avoid trial, the attorney would probably have had to withdraw when the matter went to trial and to refund all or most of the fee he had already collected. The attorney's advice to plead guilty under these circumstances at least suggests the appearance of impropriety and raises doubt whether defendant received effective assistance of counsel or effectively waived his right to a fair trial.
Nevertheless, defendant, an experienced practicing attorney, testified that he never intended to go to trial on these charges, and his former counsel's only employment chore apparently was to minimize his penalty which was to be imposed.[2] Counsel completed that chore by obtaining the state's agreement to dismiss one charge in exchange for defendant's agreement to plead guilty to the other, a course of action defendant had always planned to follow.
Defendant now wants to withdraw his plea which was handled in accordance with that agreement. When all circumstances are considereddefendant's experience as an attorney, his public admission of guilt, his intent to plead guilty, and his employment of counsel for the primary purpose of obtaining the best possible dealit is reasonable to conclude that defendant was not prejudiced by his attorney's failure at the time of the plea to reveal the apparent conflict of interest in the event of trial.[3]
There was no showing of prejudice sufficient to require that the guilty plea be withdrawn.
I dissent, however, from setting aside the sentence. When the Legislature reduces the penalty for a crime after commission of a particular offense and before imposition of sentence, the sentencing judge should take the legislative action into consideration.[4] Nevertheless, the full range of sentencing discretion is still available to the trial judge, depending upon other sentencing considerations.
Here, defendant was apparently guilty of criminal conduct with at least two juveniles over a period of three or four years. He could have been charged with several much more serious crimes than contributing to the delinquency of a juvenile. Moreover, the victims were young, immature and obviously impressionable girls. The defendant, a mature man and a member of the bar, offered no excuse for his grievous and irresponsible criminal behavior. When these factors are considered along with the fact that defendant was allowed to plead guilty to one count of contributing to the delinquency of a juvenile, one cannot reasonably say that the trial judge abused his sentencing discretion. The record and the trial court's thorough sentencing reasons support the sentence which was imposed.
I would affirm the sentence.

ON REHEARING
LEMMON, Justice.[*]
This case, in which a lawyer was convicted of contributing to the delinquency of a 16-year old girl by permitting and encouraging her use of marijuana, has a long and tortuous history.[1] Although we decline to *921 set aside the guilty plea on the issues raised in the present proceeding, we are required by Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) to remand the case to the trial court to conduct an evidentiary hearing to determine whether the state breached a plea agreement.

I.
Defendant was indicted on January 12, 1977. In an interview with the local press on the same day, he acknowledged the factual accuracy of the charges. He thereafter voluntarily entered a psychiatric facility, where he received intensive treatment for over six weeks. He was diagnosed as a manic depressive, subject to radical and rapid "mood swings". Medication was prescribed to control, or at least to modify, the "manic and depressive swings". After being released from the hospital, he remained on outpatient status under the care of a psychiatrist.
Defendant initially entered a plea of not guilty and not guilty by reason of insanity. He retained James Gaidry, an attorney who had previously served as assistant district attorney and who was noted in the area as a competent criminal defense counsel. Defendant and Gaidry thoughtfully evaluated the merits of possible defenses.[2] They also thoroughly discussed personal and family considerations.[3]
An agreement with the prosecution was ultimately reached, and defendant entered a guilty plea on August 24, 1977. Thereafter, he discharged his first attorney, retained present counsel, and began a series of challenges to the proceedings.
As outlined in footnote 1, defendant was initially sentenced to serve one year of imprisonment at hard labor, but this court set aside that felony sentence and remanded for resentencing. On remand, defendant for the first time attacked his plea, filing a motion to withdraw the plea on several grounds, one of which (conflict of interest of the first attorney) is at issue in the present decision on rehearing. The trial court denied the motion on March 4, 1980 and imposed a one-year sentence of imprisonment in the parish jail. Defendant then filed the present appeal.
On original hearing in this appeal, this court noted that Act 121 of 1976 (enacted after this offense) had reduced the penalty prescribed for the instant offense and held that a sentence exceeding the present maximum sentence (six months in the parish jail) would be inappropriate.[4] We accordingly remanded for resentence. However, we granted defendant's application for rehearing to reconsider three other contentions raised by defendant: (1) whether defendant's *922 guilty plea was constitutionally valid, (2) whether defense counsel's prior representation of a person, who gave immunized testimony to the grand jury, created such a conflict of interest as to deprive defendant of the effective assistance of counsel at his guilty plea, and (3) whether the district attorney made and subsequently breached a plea agreement with defendant.

II.
Defendant contends that his guilty plea was constitutionally invalid because he was not advised of his right against self-incrimination and did not expressly waive that right.
Defendant, himself a lawyer, was represented by an experienced criminal defense counsel. Notwithstanding that fact, the trial judge cautiously examined defendant personally, prior to accepting the plea, to assure himself that defendant understood the elements of the offense and his maximum penalty exposure. He also canvassed various rights which defendant was waiving if he entered a guilty plea.[5] The judge questioned both defendant and his lawyer regarding the plea, and both responded unequivocally that the plea was being entered *923 voluntarily after consultation and consideration of alternatives.[6]
After being resentenced and filing the present appeal, defendant filed a petition for writ of habeas corpus, asserting that his plea (given almost three years earlier) was constitutionally defective.[7]
The trial court conducted an evidentiary hearing, at which defendant testified. Defendant now argues that his plea must be set aside because the trial judge failed to advise him at the time of the plea that he was waiving his privilege against self-incrimination by pleading guilty. In support of this contention, defendant refers to this court's recent decision in State v. Jones, 404 So.2d 1192 (La.1982).
In Jones, this court extended the application of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), to those misdemeanor cases (such as this one) in which a sentence of actual imprisonment is imposed. Although Jones was not to be given general retroactive effect, the court announced that Jones would apply to cases (such as this one) which were pending in this court at the time Jones was decided (i.e., "pipeline" cases), without regard to the actual date upon which the guilty plea was entered.[8] See State v. Moore, 408 So.2d 1220 (La.1982). Therefore, we must decide whether Jones requires us to set aside a lawyer's guilty plea, entered voluntarily with the advice of competent counsel, merely because the trial judge during the plea colloquy failed to mention that the plea included a waiver of the privilege against self-incrimination.
As a lawyer, defendant was aware that his guilty plea would have the effect of self-condemnation.[9] This is certainly the essential purpose of assuring that defendant understands the relationship between his plea and the protection incorporated in the privilege against self-incrimination.
Moreover, the record of the colloquy at the entry of the plea and the testimony given at the hearing on the postplea challenge to its validity, established that defendant was aware that he did not have to plead guilty and that he could have remained silent if he elected to go to trial.[10]
*924 Although we have recognized that an accused relinquishes his privilege against self-incrimination by pleading guilty and that an intelligent waiver of the privilege cannot be presumed from a silent record, we have nevertheless in many postconviction attacks on pleas looked beyond the colloquy between the judge and defendant to determine whether a guilty plea represented an intelligent waiver of fundamental rights such as the privilege against self-incrimination. See State v. Halsell, 403 So.2d 688 (La.1981); State v. Cusher, 400 So.2d 601 (La.1981); State v. Warren, 402 So.2d 662 (La.1981).
The evidence offered at the postplea hearing in this case clearly established defendant's awareness of the privilege against self-incrimination as a result of his legal training. When asked if he knew at the time of the plea that he had the right not to take the witness stand if he chose to go to trial, defendant answered "I may have known those things at the time", but "I didn't consider any of that".[11]
Other factors bearing on the determination of the validity of the plea are that defendant had retained counsel at the time of the plea to a misdemeanor, that he entered the plea as part of a bargaining agreement, and that the state is presumably prejudiced by defendant's unexplained failure to attack the plea until three years after its entry.[12] Moreover, defendant did not state at the postplea hearing that he would have acted differently if the judge had pronounced the key missing words.
We conclude that the record supports the conclusion that defendant pleaded guilty with a full awareness that by doing so he was relinquishing the protection of the privilege against self-incrimination. See State v. Bowick, 403 So.2d 673 (La.1981).

III.
Defendant next contends that he ought to be permitted to withdraw his guilty plea on the basis that Gaidry, his first lawyer, was unable to provide effective assistance of counsel because of a conflict of interest.
Prior to representing defendant, Gaidry had sought and obtained immunity from prosecution on behalf of David Thomas, who agreed in return to testify in connection with an investigation of drug use by professional people in Terrebonne Parish.[13] *925 Gaidry subsequently undertook to represent defendant without (according to defendant) disclosing his prior representation of Thomas. Defendant contends that Gaidry had an irreconcilable conflict of interest, in that, if the matter had gone to trial, he would have been representing defendant after representing a potential prosecution witness in the same matter.
Defendant claims that he discovered the fact of Gaidry's prior representation of Thomas only after entering a guilty plea. Gaidry, on the other hand, testified that defendant was aware of his prior representation of Thomas. He further testified that defendant felt the prosecutor acted unfairly in granting immunity to Thomas and in apparently singling out defendant for prosecution.
However, the resolution of this issue does not depend upon whether defendant knew of the prior representation when he entered the guilty plea. Defendant testified that he initially considered challenging his culpability solely on the basis of his state of mind at the time of the commission of the offense. (The postplea hearings clearly established this.) Defendant admitted he never intended to contest his guilt by requiring the state to carry its burden to establish that he committed the acts necessary to constitute the offense. Indeed, as noted above, he admitted commission of the acts in a newspaper interview shortly after the indictment.[14]
Gaidry's consultations with defendant's psychiatrist quickly established that defendant's mental condition would not provide him with an adequate insanity defense or defeat the criminal intent requirement of the statute. After that, Gaidry concentrated his efforts on minimizing the consequences of the admitted guilt by securing psychiatric and character evidence in mitigation of sentence. Gaidry did not even interview any fact witnesses, because defendant insisted he would not deny any facts surrounding the offense. Furthermore, after early rejection of the insanity defense, defendant made it clear that he did not want to go to trial because of the effect on his children of the attendant publicity.
Thus, after being retained by defendant, Gaidry was never faced with a possible conflict generated by the attorney-client privilege, which would have prevented him from effectively cross-examining his former client.[15]
*926 We conclude that Gaidry's prior limited representation of Thomas did not conflict with his representing defendant under the circumstances presented here and did not impair his effectiveness in advising defendant regarding the merits of his potential insanity defense, in negotiating with the prosecution (for a bargain whereby a second charge was dismissed), and in pleading defendant's cause with the sentencing judge. Under the circumstances, Gaidry never encountered a situation in which his loyalty to defendant's cause could reasonably be expected to be compromised by his prior representation of Thomas.[16]

IV.
After the trial court denied defendant's motion to withdraw the plea based on ineffective assistance of counsel, but before sentencing, defendant filed a motion to reconsider the denial and asserted an additional ground, namely, that the district attorney had violated the terms of the plea bargaining agreement.[17] Neither the defendant nor the district attorney was able to appear on the date the motion was fixed for hearing, and the court denied the motion after counsel presented argument. The court subsequently imposed the sentence reviewed on original hearing.[18]
Defendant argues that the prosecutor promised, as an inducement for the plea, to recommend a suspended sentence. The record established that the prosecutor did not affirmatively make such a recommendation, but only stated in the presentence investigation report that he had no objection to a suspended sentence.[19]
The record, unfortunately, is not adequate to determine whether the prosecutor promised to recommend probation or whether such a promise was a substantial factor in inducing the plea. As noted above, neither the district attorney (who allegedly promised to make the recommendation) nor the defendant attended the hearing on this issue. While the assistant district attorney indicated his willingness for his superior to testify on another date, the trial court denied the motion summarily because he felt the district attorney's recommendation would not have influenced his sentencing decision. Furthermore, defendant's original attorney did not testify on this question after defendant's motion put the matter at issue.
*927 When a plea rests in any significant degree on the promise of the prosecutor, so that the promise partially induced the plea, the promise must be fulfilled. The necessity of performance is not affected by the trial judge's statement that the prosecutor's recommendation would not have influenced him. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
We conclude that it is regretfully necessary to remand the case again to the trial court for an evidentiary hearing to determine whether such an agreement was indeed made (and breached). After that hearing, it will be for the trial court initially to decide, if it finds the alleged agreement was in fact made and breached, whether the appropriate remedy is to permit withdrawal of the plea or to order the prosecutor to fulfill his end of the bargain (i.e., formally to make the recommendation prior to reimposition of sentence).[20] See Santobello v. New York above; State v. Nall, 379 So.2d 731 (La.1980).
Accordingly, although the conviction is again conditionally affirmed, this matter is remanded to the district court for a new hearing on defendant's allegation that the prosecution breached its plea agreement and for resentencing in accordance with the decree on original hearing.
DIXON, C. J., concurs with reasons.
CALOGERO, J., dissents in part, concurs in part and assigns reasons.
MARCUS and DENNIS, JJ., dissent and assign reasons.
DIXON, Chief Justice (concurring).
I respectfully disagree with the treatment of the Boykin issue in part II. of the opinion and the questions it raises about the underlying principles which should control our rulings.
This defendant was a lawyer with competent, paid counsel employed primarily to minimize the punishment defendant was to receive for admitted acts of misconduct. There was a plea bargain.
*928 The right against self-incrimination was not mentioned in the colloquy at the time of the plea of guilty, and, therefore, the plea was deficient under the standards of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). However, I would not require strict adherence to the three-right articulation requirement of Boykin v. Alabama in this case. Justice to this defendant does not require it, nor will the administration of justice be enhanced by setting aside defendant's guilty plea for this lately discovered flaw in the proceedings.
Otherwise, I subscribe to the opinion and decree.
CALOGERO, Justice, dissenting in part and concurring in part.
I dissent from the majority opinion because I do not think that the defendant's guilty plea is constitutionally valid.
It is well settled that a guilty plea is considered valid in this state only if the record of the proceedings evidences a knowing and voluntary waiver of the constitutional rights that are being waived, particularly, the right to trial by jury, the right to confront one's accusers and the privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Robicheaux and Powell, 412 So.2d 1313 (La.1982); State v. Halsell, 403 So.2d 688 (La.1981); State v. Bowick, 403 So.2d 673 (La.1981); State v. Williams, 384 So.2d 779 (La.1980); State v. Bolten, 379 So.2d 722 (La.1980); State v. Lewis, 367 So.2d 1155 (La.1979); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).
Although the majority opinion readily admits that the record in the instant case is devoid of any showing that defendant was informed of or waived his privilege against self-incrimination prior to pleading guilty, the majority nonetheless finds that the plea is valid because the defendant in this case is a lawyer. Such a result is untenable. All persons stand equal before the law. The requirements for what is necessary for an adequate Boykinization before the trial judge accepts a defendant's guilty plea are the same for all persons; the contemporaneous record of the guilty plea proceeding must affirmatively show that defendant waived his right to trial by jury, his right to confront his accusers and his privilege against self-incrimination. Such is not the case here.
Furthermore, even if we were inclined to presume that defendant knowingly entered his guilty plea simply because he has a license to practice law, such a presumption is certainly rebutted by the facts of this case. Defendant herein has never practiced criminal law since his admission to the bar in 1971. Additionally, there was evidence introduced that when this defendant was called as a prosecution witness at his co-indictee's trial he readily answered the questions posed to him by the prosecutor until the trial judge, at that time, informed him of his Fifth Amendment right against self-incrimination. At that time, after conferring with his attorney, defendant asserted his rights. Thus there is evidence in the record contradicting the presumption that the majority is willing to make, that because defendant is an attorney he knew of his rights.
The presumption that one knew of his rights because of his educational background is not an affirmative showing in the record that the defendant knew of and waived those rights. I think this a dangerous presumption to make. I cannot help but wonder how far the majority will go in applying it. The opinion certainly implies, if not expressly states, that "virtually every schoolboy" knows of his Fifth Amendment rights. Does that mean that one with, perhaps, a ninth grade education would also be presumed to have knowingly waived his fifth amendment rights under this opinion.
The majority opinion cites three cases, State v. Halsell, 403 So.2d 688 (La.1981); State v. Cusher, 400 So.2d 601 (La.1981); and State v. Warren, 402 So.2d 662 (La. 1981), apparently as authority for looking at the defendant's educational background to conclude that his plea must have been knowingly entered. I do not think any of those cases support such a procedure. In *929 Halsell, the Court looked to a waiver of rights form, filed in the guilty plea proceedings, to supplement a technically deficient colloquy. And in Cusher and Warren, although the Court did look to the preliminary proceedings that took place during the history of the case to find a knowing waiver of the defendant's self-incrimination right for a guilty plea entered over six years prior to the attack upon it, the Court specifically acknowledged that:
Currently, in every Louisiana felony case, the trial judge is required to articulate the three rights prescribed by Boykin v. Alabama. (Citations omitted.)
The exception to that rule, created in Cusher and Warren was caused by the fact that defendant had waited over six years to assert his claim. Those cases are distinguishable from the instant case.
I also disagree with any implications that may be drawn from the majority opinion (see footnote 8) concerning the application of State v. Jones, 404 So.2d 1192 (La.1981) to other cases. In Jones, it was provided:
Our decision will be fully applicable to this case and any other case filed and presently pending in this Court involving the issue presented herein. In all other cases, however, we will apply our holding to guilty pleas entered after this decision becomes final.
Nowhere in that opinion did we state or imply, as suggested by the majority, that the opinion would only apply to pending appeals or that the opinion would not apply to a pending writ application if the case had earlier been before this Court on appeal. The decision says, as it was intended to say, and as it has been actually applied, that it "will be fully applicable to this case and any other case filed and presently pending...." This means writs as well as appeals.
For the foregoing reasons, I think the guilty plea should be set aside and the case remanded for further proceedings.
However, since a majority of this Court is apparently of the view that the Boykin ization in this case was sufficient, I concur in the result remanding the case to the district court for an evidentiary hearing concerning defendant's contentions of an unkept plea bargain.
MARCUS, Justice (dissenting).
Since this is a Jones pipeline case, Boykin applies. Defendant (even though a lawyer) did not waive his privilege against self-incrimination at the time he entered his plea of guilty. Accordingly, I respectfully dissent.
DENNIS, Justice, dissenting.
I respectfully dissent.
Although chances are that anyone with a law degree would be aware of the constitutional rights he is giving up by pleading guilty, the rights forfeited are of such great importance, and it requires so little effort to make certain, that the courts should not leave this question to chance. As the Supreme Court said in another context, these rights are so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the rights is so simple, we should not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) [at n. 38]. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; Id. Recurrent inquiry into special circumstances will be necessitated by any other rule.
This is why the Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), imposed the requirement that the prosecution spread on the record the prerequisites of a valid waiver: the defendant's waiver of the three important federal rights cannot be presumed from a silent record but must appear from a record adequate for any review demonstrating utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.
*930 The majority opinion, I fear, starts this court down a slippery slope which could lead our entire court system into a morass of recurrent inquiries into the special circumstances of each defendant's age, education, intelligence or prior contact with authorities. Until recently we wisely have avoided the needless dissipation of judicial time and energy which will certainly result from speculation on such matters.
NOTES
[*] Judge E. L. Guidry, Jr., and G. William Swift, Jr. of the Court of Appeal, Third Circuit and Judge Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices ad hoc joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson, and Harry T. Lemmon.
[1] State v. Bosworth, 360 So.2d 173 (La.1978)
[2] State v. Bosworth, 373 So.2d 152 (La. 1979).
[3] State v. Bosworth, 377 So.2d 129 (La. 1979).
[4] In State v. Bosworth, 373 So.2d 152 (La. 1980), this Court held that a violation of R.S. 14:92 A(9) should be given misdemeanor status. Thus, the sentence originally imposed was merely changed upon remand to provide for imprisonment in the parish prison.
[5] This issue was raised on a post sentence writ of habeas corpus filed with the district court on October 3, 1980. This Court by order dated September 12, 1980, remanded the case for a hearing on the writ.
[6] La. R.S. 14:92(C) was amended in 1976 and presently provides a penalty as following: (c) Whoever commits the crime of contributing to the delinquency of a juvenile shall be fined not more than five hundred dollars, or imprisoned for not more than six months or both. Amended by Acts 1976, No. 121 § 1.
[7] The record reflect the indictment was returned against defendant on January 12, 1977, six days before Thomas appeared before the grand jury. However the fact that Thomas gave testimony against defendant before the grand jury is not disputed. Defendant testified that Gaidry's representation of Thomas was not made known to him until Thomas advised him of the fact some time in 1979.
[8] La.R.S. 14:92(C) was amended in 1976 to provide in pertinent part; (c) whoever commits the crime of contributing to the delinquency of a juvenile shall be fined not more than five hundred dollars, or imprisoned for not more than six months or both. Amended by Acts 1976, No. 121 § 1.
[9] Bosworth was indicted on two counts of contributing to the delinquency of a juvenile. On the basis of the plea bargain discussed supra, one of the counts was dismissed.
[10] The act made all violations of R.S. 14:92 other than a violation of subsection (7) a misdemeanor punishable by no more than six months imprisonment. The act further made a violation of sub-section (7) a felony punishable by two years with or without hard labor. Bosworth's conviction was for a violation of subsection (9) and accordingly, under the new statute would be a six month misdemeanor.
[1] At trial the attorney, while advocating his client's innocence, would have been required to attempt to discredit the testimony of the prosecution witness, whom he had previously represented and who undoubtedly made confidential comments to him on the subject during the course of that representation. Compare State v. Franklin, 400 So.2d 616 (La.1981).
[2] Immediately after the grand jury indictment, and before employment of counsel, defendant admitted in the local newspaper that he had committed the charged offenses.
[3] I disagree with the trial judge's statement that if he allowed defendant to withdraw his plea, the state could not prosecute the other charge because it was precribed. If defendant had been allowed to withdraw the plea, the matter would have been returned to its status at the time of entry of plea. Prescription arguably did not begin to run on the dismissed charge until dissolution of the plea bargain under which the charge was dismissed.
[4] The trial judge in this case took the fact into consideration, but rejected it as a controlling factor which would require limitation of the sentence to the new penalty.
[*] Judge Denis A. Barry participated in this decision as Justice pro tempore for Associate Justice Fred A. Blanche, recused.
[1] Defendant pleaded guilty to one of the two charged counts in August, 1977. Prior to sentence, defense counsel moved for production of the presentence investigation report in order to rebut any adverse information contained in the report. We granted certiorari and remanded with instructions to disclose the presentence report, after deletion of any confidential material, and to permit defendant to rebut unfavorable information contained therein. State v. Bosworth, 360 So.2d 173 (La.1978).

On remand, the trial court conducted a sentencing hearing and then sentenced defendant to one year of imprisonment at hard labor. On appeal, we set aside the sentence and remanded with instructions to resentence, holding that the offense was classified as a misdemeanor, rather than a felony, at the time of its commission. State v. Bosworth, 373 So.2d 152 (La. 1979).
[2] The testimony at the postplea hearing indicated defendant believed that his mental condition might be a basis for defeating the essential elements of "criminal intent". However, he and Gaidry realized that he could not meet his burden under Louisiana law of proving by a preponderance of evidence that his psychiatric problems were such that he was unable to distinguish right from wrong with regard to the conduct in question. See C.Cr.P. Art. 652; R.S. 14:14; State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966); State v. Abercrombie, 375 So.2d 1170 (La.1979). Further, this court has never accepted the "diminished capacity" defense. State v. LeCompte, 371 So.2d 239 (La.1979) and State v. Weber, 364 So.2d 952 (La.1978).
[3] During his testimony at the motion to withdraw his plea, defendant acknowledged his desire to plead in order to minimize the harmful effect on his family of the publicity attendant to a public trial of such notoriety.
[4] Although the reduction occurred after the instant offense, on original hearing the majority (with Lemmon, J., dissenting) determined that the trial court abused its discretion in imposing a sentence exceeding the reduced maximum sentence. See State v. Clark, 391 So.2d 1174 (La.1980). The prosecution did not apply for a rehearing, and that issue is not now before us. The original judgment as to sentence therefore is not affected by this decision on rehearing.
[5] The colloquy between the judge and defendant was as follows:

THE COURT:
"Q. Would you state your name for the record, please?
"A. Gerald A. Bosworth.
"Q. Would you state your residence please?
"A. 503 Funderburk Avenue, Houma, Louisiana.
"Q. How old are you, Mr. Bosworth?
"A. Thirty-four (34) years old.
"Q. How much education do you have?
"A. High school, college, B.S. degree from Nicholls University in '68, law degree from Tulane, J.D. 1971.
"Q. Are you a member of the Louisiana State Bar Association?
"A. Louisiana State Bar and Terrebonne Parish Bar Association.
"Q. Oh, I see. Mr. Bosworth, you have tendered a plea of guilty to the crime of contributing to the delinquency of a juvenile, which is an offense in violation of Title 14, Section 92A, Subsection 9. Do you understand that this offense is a felony under our laws?
"A. Yes, sir.
"Q. And that the penalties which may be imposed by the Court, if the Court accepts your guilty plea, is provided in said statute that it shall be [a] fine of not more than One Thousand Dollars or imprisoned for not more than two (2) years with or without hard labor or both.
"A. Yes, sir.
"Q. Do you understand that you are entitled, if you so desire, to enter a plea of not guilty and to receive a trial of this offense?
"A. Yes, sir.
"Q. Do you understand that you have a right, at your option, to be tried by a jury? Do you understand that?
"A. Yes, sir.
"Q. And if you desired not to be tried by the jury, you could waive the jury and be tried by the judge alone. Do you understand that?
"A. Yes, sir.
"Q. Do you undestand [sic] that you have the right at that trial to be presented by your accuser?
"A. Yes, sir.
"Q. Do you understand that you have the right to present your side of the case if you desire?
"A. Yes, sir.
"Q. That you have the right to be represented by a lawyer?
"A. Yes, sir.
"Q. That in the event you were convicted of the offense, you have the right to appeal the conviction and the sentence to the Supreme Court of the State of Louisiana?
"A. Yes, sir.
"Q. Do you waive your right to trial?
"A. Yes, sir.
"Q. Do you waive your right to trial by jury?
"A. Yes, sir.
"Q. Do you waive your right to an appeal to the Supreme Court in the event you are convicted?
"A. Yes, sir.
"Q. Has anybody promised you anything to get you to plead guilty?
"A. No, sir.
"Q. Has anybody promised you or threatened you or used any force or violence or any intimidation to get you to plead guilty?
"A. No, sir.
"Q. Have you had an opportunity to discuss this matter with your lawyer before you plead guilty?
"A. Yes, sir.
"Q. Are you doing this of your own free will?
"A. Yes, sir.
"Q. Is it voluntary on your part?
"A. Yes, sir.
"Q. Are you pleading guilty because you are in fact guilty?
"A. Yes, sir."
[6] As is clear from the record, defendant conceded publicly that he engaged in the conduct charged. Whether his emotional problems provided him with an "insanity" defense or a defense to the "intent" requirement of the offense charged was thoroughly considered and evaluated by defendant and counsel. See note 2, above. Only after determining that the evidence did not fit these defenses did defendant decide to enter the guilty plea.
[7] The postconviction proceeding was appropriate, because on the original appeal the only three assignments of error related to sentencing. The decree, although not pronouncing affirmation of the conviction, reversed only the sentence and remanded only for resentencing. 373 So.2d at 155. Thus, although defendant arguably was not entitled to an appeal on this issue, he filed a supplemental motion for appeal and a supplemental assignment of error.
[8] Jones is arguably inapplicable to this case. Although the present application was pending in this court on the date Jones was decided (September 10, 1981), this case had previously been before the court on appeal, and the validity of the guilty plea was not then raised. This issue was raised for the first time (in a postconviction application) after this court decided on appeal to remand for resentence.

Arguably, Jones could be restricted to direct review of misdemeanor cases pending on September 10, 1981, in which a sentence of imprisonment was actually imposed for that misdemeanor, or in which the case on direct review involved enhancement of sentence because of a prior misdemeanor plea, or in which the case on direct review was converted into a felony because of a prior misdemeanor plea.
However, for the reasons stated, we need not base our decision on these grounds.
[9] It is noteworthy that the trial judge inquired of defendant whether he was pleading guilty because he was "in fact guilty," to which defendant responded affirmatively. See colloquy at note 5, above.
[10] In McChesney v. Henderson, 482 F.2d 1101 (5th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974), the United States Court of Appeal said "[N]o rule of criminal procedure was mandated by Boykin, and there is no express requirement that specific articulation of the three constitutional rights... be given to the accused at the time of the acceptance of the guilty plea, but it is necessary that the record show that the guilty plea was intelligently and voluntarily made." Id. at 1107. Later in this opinion, the court said "[E]vidence in post conviction habeas proceedings may be considered which show that a guilty plea was intelligently and voluntarily made at the time with awareness of its consequences." Id. at 1107. (Emphasis supplied.)

When a defendant's guilty plea is challenged in postconviction proceedings, the prosecution has the burden of establishing its validity. While it is preferable that the transcript of the colloquy at the time of the plea contain a showing of an express and knowing waiver of at least these three federal constitutional rights, the prosecution may fulfill its burden by proving, with the record of the guilty plea colloquy or with other evidence introduced at the hearing on the postconviction motion attacking the plea, that the plea was knowingly and voluntarily made. That determination must be made on a case-by-case basis.
Guilty pleas, being convictions, should be afforded a great measure of finality. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). On the other hand, due process requires that a guilty plea not be closed to a subsequent attack on its constitutionality. Courts have attempted to balance the undeniable need for finality of convictions against the defendant's right to challenge a constitutionally invalid guilty plea. By the simple expedient of following rather clearly outlined prophylactic procedures, trial judges can accommodate both interests.
[11] As Justice Rehnquist said (in an unrelated context) in Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), "[A]t this point in our history virtually every schoolboy is familiar with the concept, if not the language, of the provision that reads: `No person ... shall be compelled in a criminal case to be a witness against himself ....'" 417 U.S. at 439, 94 S.Ct. at 2361.
[12] See State v. Cusher, above, in which this court upheld a guilty plea, despite a technical violation of the three-right articulation rule, because of presumed prejudice (due to lapse of time) to the state and defendant's unexplained failure to assert his claim earlier. Here, defendant (an attorney represented by exceptionally competent retained counsel) filed one prior appeal and three prior supervisory applications before raising the issue.
[13] There was no formal immunity petition filed under C.Cr.P. Art. 439.1. Here, the district attorney agreed to exercise his constitutional perogative not to prosecute in return for Thomas' cooperation. See La.Const. Art. V, § 26 (1974).
[14] It is noteworthy that defendant had been indicted by the grand jury and publicly admitted the acts constituting the offenses six days before Gaidry undertook to represent Thomas. Moreover, Thomas had given a statement to the Drug Enforcement Administration before he was subpoenaed to testify before the grand jury. Gaidry's obtaining of immunity for Thomas was the extent of that representation, which took place over a period of only two or three days and was concluded with the payment of a modest fee.
[15] In Smith v. Bordenkircher, 671 F.2d 986 (6th Cir. 1982), the court of appeals, after a remand by the United States Supreme Court for reconsideration in light of Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), held that Cuyler creates no "per se" rule barring representation of a defendant solely because of prior representation of a government witness.

In Smith, defendant and co-defendant (who subsequently entered a guilty plea and became a government witness at defendant's trial) were initially represented by the same lawyer. The lawyer withdrew from representation of the co-defendant upon learning of her planned plea agreement with the government. However, the lawyer continued to represent defendant and represented defendant at his trial at which the former co-defendant (his former client) testified. The district court on remand determined that the lawyer "conducted a professionally acceptable cross-examination", despite his prior representation of the witness, and upheld the conviction. The court of appeals affirmed, observing that "the Cuyler test directs us to determine, on the facts of each case, whether there was an actual conflict of interest and whether that conflict has caused ineffective performance". 671 F.2d at 978.
Compare State v. Franklin, 400 So.2d 616 (La.1981), in which this court, under the facts presented, found that defense counsel's motion to withdraw should have been granted, because defense counsel asserted without contradiction that his ability to represent defendant would be impaired when he was required at trial to cross-examine a government witness who was his former client and a former co-defendant.
Even if this case had gone to trial, it is not certain that the state would have called Thomas. The indictment charged conduct with a juvenile over a 25-day period, conduct which defendant conceded he never intended to deny. Thus, Gaidry's testimony (that he did not expect Thomas to be called) was credible.
[16] In denying the motion to withdraw the guilty plea, the trial court found that Gaidry was hired primarily to negotiate a favorable plea and sentence agreement. He also concluded that Gaidry was unaware that Thomas' testimony before the grand jury concerned Bosworth (who had already been indicted before Thomas testified).
[17] Defense counsel justifies the lateness in raising this issue by asserting he did not know of the district attorney's failure to make the recommendation until the trial judge obliquely referred to that fact during the hearing on defendant's original motion to withdraw the plea.
[18] Again, defendant arguably did not have the right to an appeal. However, defendant briefed and argued the matter under a supplemental assignment of error, and on original hearing this court considered the issue as if it had been properly raised on appeal.
[19] There is no allegation that defendant was promised a suspended sentence if he entered a guilty plea. Certainly, both defendant and defense counsel hoped the sentence would be suspended. Both "misread" the situation, however, and the record clearly established the trial judge gave no assurances regarding the sentence to be imposed.

Counsel's failure to assess correctly or to anticipate the trial court's ultimate judgment is not a ground for setting aside the plea. See State v. Lockwood, 399 So.2d 190 (La.1981). Both defendant and his attorney were doubtlessly disappointed when the trial judge announced his decision not to grant probation. Nevertheless, a lawyer's best advice regarding a rather speculative matter, such as the sentence to be imposed, cannot be expected to be infallible. This court has held that a defendant is not entitled to withdraw a guilty plea, even prior to sentence, simply because "the penalty imposed is heavier than anticipated." State v. Deakle, 372 So.2d 1221, 1222 (La.1979); State v. Delgado, 388 So.2d 384 (La.1980).
[20] In State v. Neitte, 363 So.2d 425 (La. 1978), this court found a breach of a promise to recommend probation and remanded with instructions to permit defendant to withdraw his plea of guilty. In this case, although no recommendation was made, the prosecutor did favorably express his lack of objection to a suspended sentence. Whether defendant was entitled to a more affirmative and positive statement, encouraging the trial court to grant probation, must be decided at the evidentiary hearing ordered by our remand. However, even if a technical breach is found, we emphasize that the court in Santobello remanded to the trial court to decide whether to order "specific performance" of the agreement or to permit withdrawal of the plea.

In Santobello, the Court said:
"We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled, we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge."
Thus, the trial court must first decide whether a breach occurred, and then decide what relief is appropriate under the particular facts and circumstances. If the trial court finds that the prosecutor did promise to recommend probation (but failed to do so in affirmative terms), then the trial court must decide whether to grant the motion to withdraw or, alternatively, to allow the prosecutor to fulfill his part of the agreement. If the trial court does find that defendant was entitled to a positive recommendation regarding probation, but nevertheless decides not to permit withdrawal of the plea, then the trial court must consider (as suggested by Santobello) transferring the case to another judge for resentencing (in light of all appropriate factors, including the prosecutor's recommendation).