400 So.2d 616 (1981)
STATE of Louisiana
v.
Kenneth FRANKLIN.
No. 80-KA-2740.
Supreme Court of Louisiana.
June 22, 1981.
*617 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Premila B. Chumbley, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
M. Michele Fournet, Baton Rouge, for defendant-appellant.
LOTTINGER, Justice Ad Hoc.[*]
This appeal by Kenneth Franklin from his armed robbery conviction is before us on the sole issue of whether Franklin received adequate assistance of counsel at trial. Specifically, Franklin contends that his attorney, who represented Franklin's sister Carolyn on a forgery charge arising out of the same circumstances as the armed robbery, was inhibited by the attorney-client privilege[1] from effectively cross-examining Carolyn on the stand.

*618 THE FACTS
In the evening of January 29, 1980, Franklin was riding in a car driven by sister Carolyn. The evidence at trial revealed that Franklin, who was wearing a dress, directed his sister to follow a car driven by the victim of the robbery. Carolyn, who by her own admission was intoxicated, followed the car around the winding lakeshore streets near the LSU campus in Baton Rouge. When the victim stopped her car at her apartment, Franklin got out of Carolyn's car and walked to the victim's car. The victim thought Franklin was a woman at first, but when she heard his voice telling her to roll down the window she realized he was a man. She followed his request nonetheless. The victim testified Franklin produced a gun and ordered her to turn over her purse. She complied. He then left and effected a getaway in Carolyn's car. Soon after the robbery Carolyn was caught forging the victim's signature on some of the checks taken from the victim's purse. Her arrest lead to Franklin's arrest.
The East Baton Rouge Public Defender's Office was appointed to represent both of the defendants, and Vincent Wilkins, Jr. was assigned to each case. However, the record indicates that each defendant was charged on a separate bill of information with a separate offense, and it was not until the day before Franklin's trial that either the court or Wilkins learned that the offenses arose out of the same transaction and that the two defendants were related. On July 7, 1980, Carolyn was scheduled to go to trial but she pleaded guilty as charged to the forgery offense. The prosecution then granted her immunity from the armed robbery or other related offenses if she agreed to testify against her brother.
On the same day Carolyn pleaded guilty, the jury for Franklin's trial was empaneled. On the next morning, July 8, 1980, prior to the swearing in of the first witness, Mr. Wilkins moved to withdraw as counsel of record for the defendant and his sister because of a "built-in conflict" between his representation of the two defendants. He moved that both he and the office of public defender be relieved in both cases.
In a colloquy with the trial judge, Wilkins based his motion primarily on the ground that the attorney-client privilege existing between him and Carolyn would prohibit him from effectively cross-examining Carolyn at her brother's trial. Wilkins also noted that Franklin and his sister were charged with two separate offenses and that their defenses could be antagonistic. The trial judge replied that Carolyn, by making a confession the previous day covering the time sequence before and after the armed robbery, "effectively waived her attorney client privilege as to that statement." The trial court then asked what constitutional rights of Franklin would be violated by Wilkins continuing to represent him. Wilkins responded:
"Well, your honor, I think that every individual has the right to counsel and that that right has built within it the confidence that that individual representing them is representing them in their interest and in theirs alone. But, in the present situation I am faced with what appears to be to me and certainly will appear to be to the defendants as to pan one off against the other and this is the very thing even thethe possibility of semblance of that should be avoided."
The trial judge recognized that a conflict could arise:
"Only at the point in time at which the state would intend or would in fact call Carolyn Franklin to testify against this *619 defendant would an actual conflict of interest arise, according to my way of thinking. However, because of the way in which this thing developed it appeared that there would be a conflict of interest since the state has indicated after the defendant's plea this morning that they did intend to call her to testify at the trial of this defendant."
The trial court thereupon relieved Wilkins of his representation of Carolyn Franklin, apparently because of the conflict he had just previously described. He refused, however, to relieve Wilkins or the public defender's office of the representation of Kenneth Franklin because a jury had been selected, trial was ready to proceed, and a mistrial would have to be declared. The trial judge then noted that declaration of a mistrial would require appointment of another attorney. He then reasoned:
"And, the question becomes would that attorney whoever he might be, be in a better position than you find yourself right now, and I think not. I think you probably are in a much better position than any attorney would be in the future for the simple reason that if in fact the state intends to call as a witness, Carolyn Franklin, to testify against Kenneth Franklin, you have had first hand information through your representation, your good faith representation of Carolyn Franklin and you would be in a better position than any attorney I can imagine to know whether or not Carolyn Franklin could be attacked as an incredible witness or in fact could be considered as a credible witness. And, you could, therefore, tailor your cross-examination accordingly. And, cross-examination is an important right and I think, based upon those facts, that you, more than anyone, could protect the defendant's right to cross-examination because you have whatever knowledge you have come by in good faith through your representation of Carolyn Franklin. If in fact there is information that would be favorable to Kenneth Franklin which you have in good faith received as the attorney for Carolyn Franklin, I believe it is a constitutional obligation of this court and a constitutional right of this defendant to be allowed to present that evidence. And, I can think of no one better who would be in the position to present that evidence than you because of the position that you held in good faith prior to this matter being pointed out to the court."
The trial judge also said if a conflict arose between Franklin's constitutional rights and Carolyn's attorney-client statutory rights, the constitutional rights would have greater authority. He reiterated that Carolyn Franklin, by confessing the previous day, "has divulged all information to this court in open court under oath which might be the subject of an attorney-client privilege as to this case."
The trial judge denied Wilkins' request to take a writ on the ruling to the Louisiana Supreme Court.
At the trial that followed, Franklin's confession was presented to the jury through the police officer who took it. Franklin had admitted robbing his victim but denied that he used a weapon. The officer's testimony revealed that in a search of the apartment where Franklin was staying, the victim's handbag was found. The victim's testimony as to what happened generally tracked Franklin's confession, but with one important difference. She testified that Franklin definitely had a gun during the robbery. According to Franklin's confession, he had only a hand towel wrapped around his hand and the towel appeared to be a weapon.
Carolyn Franklin's testimony added little to the state's case. She admitted that she was "driving highly intoxicated" and had a difficult time recalling exactly what happened on the evening of the alleged robbery. She admitted driving in the general vicinity of the lake area and remembered at one point that her brother had picked up something and put it in the back of the car. She did not remember how her brother was dressed, but admitted that her brother was either a homosexual or a transvestite. She noticed that her brother had another purse when she got back to Washington Street. *620 She said she assumed he got the purse at a gas station at which they had stopped that night. She identified the victim's purse as the one she noticed in the back of her car.
On cross-examination, Wilkins hammered home the fact that Franklin was not possessing a gun and that Carolyn never saw her brother go to anybody else's car.
The jury found Franklin guilty as charged. He was sentenced to serve 15 years at hard labor without benefit of probation, parole or suspension of sentence.

ASSIGNMENT OF ERROR
The sole assignment of error briefed by the defendant on appeal is whether his Sixth Amendment right to effective assistance of counsel was violated by the trial court's refusal to allow Mr. Wilkins to withdraw as counsel of record because of conflicting loyalties.

CONFLICT OF INTEREST
The right of every criminal defendant to have the assistance of an attorney during the proceedings against him is a cornerstone of our legal system. Amendment 6, U.S. Constitution; Article I, Section 13, Louisiana Constitution (1974). To be more than just a hollow right, our law requires that assistance of counsel be effective. As a general rule, courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he is representing. The issue of conflicting loyalties usually arises in the context of joint representation of co-defendants. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1976); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Hopper, 639 F.2d 236 (C.A.5 1981). But it has also surfaced in cases like the one at bar, where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney. United States v. Morando, 628 F.2d 535 (C.A.9, 1980); United States v. Partin, 601 F.2d 1000 (C.A.9 1979). Although the issue can arise in different contexts, the legal principles are the same.
Multiple representation is not per se illegal and does not violate the Sixth Amendment to the U.S. Constitution (or Article 1, Section 13 of the Louisiana Constitution) unless it gives rise to a conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Holloway, supra. The mere possibility of conflict is insufficient to reverse a criminal conviction. However, if a defendant establishes that an actual conflict of interest adversely affected his lawyer's performance, he has demonstrated a violation of his Sixth Amendment rights under the U.S. Constitution and his Article I, Section 13 rights under the Louisiana Constitution of 1974. Cuyler, supra. If an actual conflict exists, there is no need for a defendant to prove that he was also prejudiced thereby. Showing of an actual conflict mandates reversal.
In Holloway, supra, the Supreme Court held that when defense counsel timely raises the issue that a probable conflict in joint representation will occur, a trial judge's failure "to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel" deprives the defendant of his constitutional right to assistance of counsel. The representations of an attorney that he perceives a potential conflict should be given great weight, Johnson v. Hopper, supra, and when an attorney requests to withdraw as counsel because of a potential conflict, he has made a prima facie case for relief under Holloway. United States v. Morando, supra.
Morando involved a situation similar to that of the case at bar. On the day before trial the defendant's attorney was informed by the government that a witness the attorney had previously represented in a separate criminal matter would be called to testify against the defendant. The attorney moved to withdraw because he would have a potential conflict of loyalties in that his cross-examination of the witness would *621 be impeded by the attorney-client privilege. The district judge denied the request, observing: "Well anything you learned is in confidence and you wouldn't utilize, but any other counsel that represented her probably wouldn't know about these things anyway." The appellate court reversed, holding that Holloway requires a district court either to accept the attorney's representation of the existence of a conflict or take sufficient steps of its own to assure there is no conflict. The district court's one sentence statement was not enough:
"In the present case, the district court took no steps to inquire as to the validity of counsel's assertion that a conflict existed. The district court's observation that any confidential information [the attorney] received in his representation of [the witness] would not be available to any other attorney does not really address the issue of impediment of cross-examination. Another attorney, unrestrained by conflicts of loyalty and the attorney-client privilege arising from prior representation, might have more effectively challenged the credibility of [the witness's] testimony than [the attorney] was able to do."
The court also found there was no waiver of the attorney-client privilege by the witness.
In the present case, the trial court certainly took more steps than the district court in Morando to ascertain whether an actual rather than remote conflict of interest existed. The trial judge admitted that an actual conflict of interest would arise when the state called Carolyn Franklin to testify against her brother. He apparently reasoned, however, that relieving Wilkins of any further representation of Carolyn would dispel the conflict. He also found that Carolyn Franklin's full confession about the particulars of the armed robbery and forgery offenses amounted to a waiver of her attorney-client privilege. Once the privilege was waived, Wilkinshaving possibly had the benefit of some confidential communications with Carolyn Franklin would be in the best position to cross-examine her, the court reasoned.
We would have no problem with the trial court's reasoning in this case had there been an express waiver by Carolyn Franklin of her attorney-client privilege with Wilkins. But the record before us is devoid of any verbal or written statement by Carolyn Franklin that would show that she knowingly waived the privilege. Agreeing to testify under a grant of immunity is insufficient to waive the privilege. See Morando supra. Additionally, the trial court's refusal to allow Wilkins to withdraw as counsel of record was not the type of "court order" under DR 4-101(C) contemplated by the Code of Professional Responsibility to require an attorney to divulge his client's confidences. The trial court's refusal to grant the motion to withdraw simply required Wilkins to continue as counsel of record for Franklin. It would have been a relatively simple matter for the prosecution, when hearing Wilkins' oral request to withdraw because of the attorney-client privilege, to attempt to get Carolyn to waive her privilege before the court.
We do not know and will not speculate on what, if any, information Wilkins gained in confidence with Carolyn Franklin that could have helped his case with Franklin. However, we must agree with the defendant's attorney, and with the trial judge, that an actual conflict arose when the state called Carolyn Franklin to the stand. Wilkins was put in the unenviable position of trying zealously to represent the defendant at trial while simultaneously trying to protect the confidences of a former client who was testifying for the state against the defendant. The freedom of unfettered cross-examination was impaired by whatever information Wilkins gleaned in prior confidential discussions with Carolyn Franklin. In his own words, he was placed in a position of having "to pan off one against the other."
We find, too, that Wilkins' motion to withdraw was timely submitted. According to the record and statements made during oral arguments before this court, Wilkins did not learn of the connexity between the two cases until the day before Franklin *622 went to trial. Indeed, the trial court openly acknowledged that neither it nor the defense attorney knew the cases were connected before the day before trial.
The fact that joint representation is not per se unconstitutional is of little comfort to prosecutors and trial courts because if joint representation is allowed and a conviction is obtained, the issue will almost always surface on appeal. Perhaps the only way to prevent the issue from continuously cropping up on appeal is to prevent joint representation altogether or to painstakingly ascertain from all defendants who are being jointly represented that they understand the risks involved and that they knowingly waive the right to a totally independent attorney. See United States v. Partin, supra, for a good discussion of how a trial court correctly handled the joint representation issue.
Therefore, for the above reasons, the conviction and sentence are reversed and the case is remanded to the district court for a new trial.
REVERSED AND REMANDED.
NOTES
[*] Judges Lottinger, Edwards, and Ponder of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Watson.
[1] DR 4-101 under the Code of Professional Responsibility provides:

DR 4-101. Preservation of Confidences and Secrets of a Client.
(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
(B) Except as permitted by DR 4-101(C), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
(C) A lawyer may reveal:
(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.
(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.
(3) The intention of his client to commit a crime and the information necessary to prevent the crime.
(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.
(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(C) through an employee.
(E) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(C) and (D) through an employee.