16-293 (La.App. 5 Cir. 12/14/16)

**STATE of Louisiana**

v.

**Joharri O. WALKER**

NO. 16–KA–293

Court of Appeal of Louisiana, Fifth Circuit.

December 14, 2016

COUNSEL FOR PLAINTIFF/APPEL-LEE, STATE OF LOUISIANA, Paul D. Connick, Jr., Terry M. Boudreaux, Thomas J. Butler, Matthew R. Clauss, Lynn Schiff-man

COUNSEL FOR DEFENDANT/AP-PELLANT, JOHARRI O. WALKER, Bruce G. Whittaker

Panel composed of Jude G. Gravois, Robert A. Chaisson, and Stephen J. Windhorst

WINDHORST, J.

Defendant, Joharri O. Walker, was convicted of the second degree murder of Stefan Johnson, a violation of La. R.S. 14:30.1. He was sentenced to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence.

For the reasons that follow, we affirm defendant's conviction and sentence.

## Facts

The victim, Stefan Johnson, was shot and killed in Marrero, Louisiana, on July 8, 2014. Harold Mitchell, a neighboring bystander, testified that at approximately 12:35 P.M., while outside of his home at 1136 Martin Drive, in Marrero, he heard multiple gunshots coming from "the next street." Shortly thereafter, Mr. Mitchell observed the victim running towards him, wearing a shirt soiled with blood. He advised the victim to sit down in the driveway[1] while he attempted to render aid, but ultimately, the victim collapsed face down, bleeding from a gunshot wound to his back.[2] The police arrived within minutes and transported the victim to the hospital where he subsequently passed away. It was the State's theory at trial that ongoing hostilities between two rival gangs, the Harvey Hustlers and Villa Boys, prompted this drive-by shooting.

## Discussion

█ In his first assignment of error, defendant contends that he was denied his constitutional right to conflict-free counsel. He argues a conflict of interest existed due to defense counsel's prior representation of Johnell Walker, defendant's brother, who, although not charged in this case, was inside the vehicle at the time of the shooting. Defendant asserts that the conflict was not cured by a valid waiver because he was not informed that a conflict of interest existed, the potential consequences to his defense from continuing with conflict-laden counsel, and/or |₂that he had a right to obtain other counsel. Defendant contends the trial court erred in finding the conflict no longer existed and infringed upon his Sixth Amendment right to counsel, requir-

ing reversal and remand of this case for a new trial.

█ Under the Sixth Amendment, a defendant is entitled to assistance of counsel for his defense. U.S. Const. Amend. VI; State v. Cisco, 01–2732 (La. 12/03/03), 861 So.2d 118, 132, cert. denied, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004); State v. Franklin, 400 So.2d 616, 620 (La. 1981). To be more than just a hollow right, assistance of counsel must be effective. Franklin, 400 So.2d at 620. Thus, as a general rule, an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he is representing. Id. Accordingly, the right to counsel secured under the Sixth Amendment includes the right to conflict-free representation. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); State v. Olivieri, 10–1064 (La.App. 5 Cir. 09/13/11), 74 So.3d 1191, 1193, writ denied, 11–2227 (La. 02/17/12), 82 So.3d 283.

█ After the trial court has been alerted that a conflict of interest exists, it must take the proper steps to assure that the defendant's Sixth Amendment right to effective assistance of counsel is not violated. Cisco, supra. When the issue of a conflict of interest is raised pre-trial, the trial court is required to either appoint other counsel or take adequate steps to determine whether the risk of a conflict of interest is too remote to warrant other counsel. Olivieri, 74 So.3d at 1193. First, the attorney is required to disclose the basis of the conflict to the trial court to determine if the conflict is too remote to warrant other counsel. Id. If the trial court determines the conflict is not too remote, it should explain the conflict to the defendant and inform the defendant of his right to

---

1. The driveway was located at 1125 Martin Drive.

2. Mr. Mitchell testified that he did not see any weapons in the victim's possession.

conflict-free representation. Id. If the defendant chooses to proceed with conflicted counsel, a narrative form statement should be prepared that indicates the defendant is fully aware of his right to conflict-free counsel but has chosen to knowingly and intelligently waive his [3 right. Id. Before a defendant can knowingly and intelligently waive his right to conflict-free counsel, he must be told (1) that a conflict of interest exists, (2) the consequences to his defense from continuing with conflict-laden counsel, and (3) that he has a right to obtain other counsel. Id. (citing Cisco, 861 So.2d at 132–33).

On September 28, 2015, the day before trial, the State disclosed the following information to the trial court:

THE STATE:

Your Honor, after discussions with defense counsel last week, I do need to alert the Court to one potential issue. Defense counsel advised me that in addition to representing Joharri Walker he has also been retained, at least at the moment, or at least previously to represent the defendant's brother in an unrelated case. That gentleman's name is Johnell Walker and he was indicted this past Thursday for murder.

* * *

The State's allegation there's a drive-by shooting in this case. There's a driver of the vehicle. The State's allegation will be that Joharri Walker was in the front seat passenger and was the shooter and in the back seat at the time of this drive-by shooting our allegation is that Johnell Walker was sitting. He hasn't been arrested or charged in this case. However, Your Honor, I think it does present a potential conflict of interest. In that, certainly one possible defense, I'm not saying it's a good one, I don't anticipate any lawyer to select it but a potential defense is that Johnell Walker is the person who committed this murder, not Joharri Walker, and I just did some case law researching [sic]. There are some cases that suggest under that scenario, if defense counsel because of it's representation of Johnell Walker would feel that he couldn't select that defense. That's a potential conflict of interest and defense counsel and I discussed it at length last week. It's my understanding that in order to resolve that potential conflict, defense counsel will be withdrawing from Johnell Walker's case. And with that, I do believe will be resolving a potential conflict. Nevertheless, in an abundance of caution I think it would be wise and probably a best practice for the Court to conduct a colloquy with Joharri Walker just to verify that he wants Jerome Matthews to be his attorney. That he understands with [sic] the potential could be. That his attorney will be withdrawing from his brother's case and that likewise or very likeable [sic] will resolve that conflict but I think his understanding of that aught [sic] to be put on the record, and his decision to proceed with Mr. Matthews likely should be explored.

Other pending pre-trial motions were addressed and the issue regarding the alleged conflict was re-visited the following day, prior to the start of trial.

[4 THE STATE:

My understanding with Defense Counsel is that he has withdrawn formally from the Johnell Walker matter; no longer his attorney. For the reason, the conflict is likely resolved.

But State and Defense, so the record is perfectly clear, Your Honor; I know defendant has orally waived to Defense Counsel any conflicts. We just ask that the Court conduct a colloquy with the Defendant to ensure he understands the nature of the potential conflict, and

again waives that formally for the record prior to us beginning jury trial.

Defense counsel's motion to withdraw as counsel of record in the Johnell Walker matter was admitted into evidence. In his motion to withdraw, defense counsel asserted the motion was filed before the arraignment in Johnell Walker's case. Defendant was sworn in and the following colloquy followed:

THE COURT:

You understood that your attorney Mr. Matthews had at some point agreed to represent your brother?

DEFENDANT:

Yeah.

THE COURT:

Okay. You understand that considering that he's representing both your parties, or now that he has withdrawn from that case, do you still wish to have Mr. Matthews as your attorney in this particular trial?

DEFENDANT:

I see no reason why not.

THE COURT:

Okay. Was there ever any problem with him potentially representing your brother in regards to this case?

DEFENDANT:

No, not—not that I know of.

\*\*\*

THE STATE:

Your Honor, just very briefly. Obviously the potential danger that Defense Counsel and I discussed, was just a possibility that if he represented Johnell Walker, a potential defense that might be available is that Mr. Walker's brother is the person who conducted the shooting.

If he represented Johnell, he might feel, because of his representation of his brother, that he would be unable to present that defense for example, that

the brother's the person who conducted the shooting. Now that he has withdrawn, there's no obligations on his part to—

THE COURT:

Correct.

THE STATE:

—to not implicate another individual. I just want Mr. Walker to understand that's the nature of the conflict, that the conflict no longer exists, and that he's okay with proceeding forward with trial, with Mr.—with his currant [sic] defense counsel.

You understand all that, Mr. Walker?

DEFENDANT: ˙

Yeah I understand.

\*\*\*

THE COURT:

I believe that was vitiated when he withdrew from that case; I believe the conflict no longer exists, so—

▪ Considering the information provided to the trial court by the State and defense counsel's motion to withdraw in the Johnell Walker matter, we find no actual conflict of interest existed in this case, and thus, the efficacy of the waiver is not at issue. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). It is only when an actual conflict exists that the reversal of a conviction may be required. See Mickens v. Taylor, 535 U.S. 162, 168, 122 S.Ct. 1237, 1241–1242, 152 L.Ed.2d 291 (2002). An "actual conflict of interest" has been defined as follows:

If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney

owes a duty to the defendant to take some action that could be detrimental to the other client. State v. Reeves, 06–2419 (La. 05/05/09), 11 So.3d 1031, 1081, cert. denied, 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009).

■ |₆A defendant must prove his attorney was placed in a situation inherently conducive to divided loyalties, as opposed to a mere theoretical division of loyalties.[3] Olivieri, 74 So.3d at 1194; Mickens, 535 U.S. at 171, 122 S.Ct. at 1243. The burden of proving an "actual conflict of interest," rather than a "mere possibility of conflict," rests upon the defendant. Franklin, 400 So.2d at 620. The inherent dilemma in conflict of interest situations stems from what counsel finds himself compelled to refrain from doing. Holloway v. Arkansas, 435 U.S. at 489–490, 98 S.Ct. at 1181; State v. Garcia, 09–1578 (La. 11/16/12), 108 So.3d 1, 33, cert. denied, —— U.S.——, 133 S.Ct. 2863, 186 L.Ed.2d 926 (2013). See also State v. Kelly, 14–241 (La.App. 5 Cir. 10/29/14), 164 So.3d 866, writ denied, 14–2499 (La. 09/25/15), 178 So.3d 163; State v. George, 12–0204 (La.App. 4 Cir. 01/09/13), 108 So.3d 269, writ denied, 13–0317 (La. 09/13/13), 120 So.3d 279.

Based on a review of the record, there is no basis to conclude that an actual conflict of interest existed. Defendant's brother, Johnell, was not called to testify at defendant's trial, nor was he charged as a co-defendant in this case. Defense counsel was not in a situation in which he owed a duty to a party that was adverse to defendant's interests, and thus, he was not forced to labor under an actual conflict with clearly divided loyalties. Moreover, defense counsel's representation of Johnell was extremely limited, as evidenced by the filing of the motion to withdraw before Johnell's arraignment in his unrelated case.[4] Accordingly, because defense counsel withdrew from representing Johnell prior to trial, no actual conflict existed in this case. State v. Rice, 95–107 (La.App. 3 Cir. 06/07/95), 657 So.2d 481.

|₇Accordingly, for the reasons provided herein, defendant's first assignment of error is without merit.

■ In his second assignment of error, defendant argues he was deprived of his right to due process and a fair trial by the trial court's failure to exclude "other crimes" evidence that was more prejudicial than probative. He contends the trial court erred in allowing evidence of his alleged gang affiliation into evidence at trial. Defendant concludes the trial court's error in admitting this evidence was not harmless, mandating reversal and remand for a new trial.

The State contends the evidence of defendant's gang affiliation was relevant to establish his motive and intent for the shooting, as well as his identity. The State further maintains that any error committed in the admission of the prior bad acts would be harmless error considering the

---

**3.** The issue of conflicting loyalties "usually arises in the context of joint representation" but "can also arise where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney." State v. Tart, 93–0772 (La. 02/09/96), 672 So.2d 116, 125 (citing State v. Kirkpatrick, 443 So.2d 546, 552 (La. 1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984)). Here, neither joint representation or cross-examination of a witness who was or is a client of defendant's trial attorney is at issue.

**4.** Matthews represented Johnell for less than five days after Johnell was indicted in an unrelated criminal matter. Johnell was indicted on September 24, 2015, and in open court on September 29, 2015, Matthews formally withdrew from Johnell's case.

strong evidence presented against defendant.

On September 16 and 25, 2015, two notices of intent were filed by the State regarding defendant and the victim's alleged gang involvement. The September 16, 2015 notice indicated the State's intent to introduce testimony from Detective Gabriel Faucetta concerning defendant's known association with the Harvey Hustlers, a street gang known for violent crime and narcotics activity, and testimony regarding the victim's known association with the Villa Boys, another violent gang. The State advised that although it did not consider the evidence to constitute other crimes evidence under La. C.E. art. 404B, in an abundance of caution the State provided notice that it intended to introduce evidence regarding the ongoing hostilities and acts of violence between the Harvey Hustlers and Villa Boys for an extended period of time prior to the murder of Stefan Johnson. The State contended this to be relevant as proof of motive, intent, identity, and absence of mistake or accident, and disclosed specific incidents of alleged violence between the two gangs that it intended to introduce at trial.[5] The September 25, 2015 notice also provided additional references to reported incidents of alleged violence between the two gangs the State intended to introduce at trial as proof of intent, plan, knowledge, identity, and the absence of mistake or accident.[6]

In response, defendant filed an objection requesting that the evidence of prior acts concerning defendant's alleged gang membership not be admitted. Defendant argued the State should be prohibited from introducing the evidence due to lack of proof of defendant's gang membership. He further maintained the State's evidence did not have any independent relevance, and should be deemed inadmissible because its sole purpose was to introduce bad character evidence to show defendant acted in conformity therewith. Lastly, defendant alleged the State's evidence was not being offered to prove a material fact genuinely at issue in the case. Defendant also filed a related motion *in limine* to exclude testimony by police officers of any gang involvement by defendant, and a motion *in limine* regarding illegal activities, claiming that the prejudicial effect of any such information was substantially outweighed by its probative value.

The day before trial, a hearing was held on the State's 404B evidence. It was the State's theory of the case that defendant and the victim were associated with rival gangs, *i.e.*, defendant with the Harvey Hustlers and the victim with the Villa Boys. The State indicated it intended to introduce testimony from four police officers concerning four different police reports establishing the violent hostilities between the two gangs and defendant's involvement.

The first incident introduced was a shooting on September 15, 2013, outside of defendant's residence where multiple casings were recovered and defendant's house was damaged while defendant was present. The State asserted this incident did not constitute 404B evidence because

**5.** The substance of the incidents are not contained in the notice. However, the State referenced a report under Gretna Police Department item number J–060259–14, and the reports under Jefferson Parish Sheriff's Office item number F–20707–14, previously disclosed through open file discovery to defense counsel.

**6.** Again, the substance of the incidents are not contained in the notice. The State specified that the incidents had been documented under Jefferson Parish Sheriff's Office item numbers K–15996–13, I–13737–13, and J–24865–13.

defendant did not commit the prior bad act. However, it was the State's intention to introduce this evidence for purposes of establishing a motive for the events that followed.

The second incident introduced occurred on October 27, 2013, and involved another shooting where multiple .380 caliber casings were recovered. The State argued the testimony would establish that the distribution of the casings were consistent with a "running gun battle," resulting in damage to a house belonging to Durrell Goldman, a member of the Villa Boys gang, and a known associate of the victim, and who was seen with the victim shortly before this homicide.

The third incident introduced occurred on November 18, 2013, and the State argued it would establish that defendant was found in possession of the weapon that fired the .380 caliber casings at Durrell Goldman on October 27, 2013. The State contended the Goldman "gun battle" established a pattern of violence and evidenced a motive between the rival gangs to injure one another.

Lastly, the State claimed it would introduce testimony concerning a shooting incident that occurred two weeks before the instant homicide. The reported location of the incident was 1136 Marshall Drive, with the shots having been aimed directly across the street at the victim's home.[7] Numerous .40 caliber casings were located at the scene which matched the .40 caliber casings recovered at the scene of the homicide in this case. The State further argued it would be able to establish that the person in possession of the weapon during the time of the shooting at 1136 Marshall Drive and at the time of this homicide was defendant. Accordingly, the State argued that the evidence showed motive, plan, and

intent on defendant's part to shoot at the victim, as well as a pattern of violence towards the victim and the Villa Boys.

$|_{10}$Defendant argued the prior shootings sought to be introduced by the State were irrelevant and the evidence was unnecessary to prove motive since it was not an element of the crime.

The court found the evidence to be more probative than prejudicial and held that it was admissible. The trial court further denied defendant's motions *in limine* to exclude any testimony from police officers regarding any of defendant's alleged gang involvement and illegal activities. The court found that the testimony of the police officers regarding their process of uncovering certain facts pertaining to defendant's gang involvement or association to be relevant in explaining the course of their investigation in this matter.

█ Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404B(1); State v. Prieur, 277 So.2d 126, 128 (La. 1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted. State v. Dauzart, 02–1187 (La.App. 5 Cir. 03/25/03), 844 So.2d 159, 165. Evidence of other crimes is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad act. La. C.E. art. 404B(1); Id.

---

7. The victim's home is located at 1137 Marshall Drive.

Prior to admitting evidence allowed pursuant to La. C.E. art. 404B(1), the State must provide notice to the defendant and afford a hearing at which it must show that the evidence is admissible. State v. Prieur, supra. In order for other crimes evidence to be admitted under La. C.E. art. 404B(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. State v. Jackson, 93–0424 (La. 10/18/93), 625 So.2d 146, 149. Further, the probative value of the extraneous evidence must outweigh its prejudicial effect. La. C.E. art. 403.

The defendant bears the burden of showing that he was prejudiced by the admission of the other crimes evidence. Dauzart, 844 So.2d at 165–66. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art 404B(1) will not be disturbed. State v. Williams, 02–645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02–3182 (La. 04/25/03), 842 So.2d 398.

Throughout the trial, various references were made to defendant's association or affiliation with the Harvey Hustlers gang. Additional testimony regarding the four specific incidents of past violence between the rival gangs was also admitted. Deputy Frederick Smith testified regarding the September 15, 2013 shooting incident targeted at defendant's residence. Detective Francisco Sperandeo then testified regarding the October 27, 2013 "running gun battle" aimed at Durrell Goldman, a known Villa Boys gang member, and which involved a gun found on defendant's person on November 18, 2013. The testimony at trial further established Goldman's association with the victim in this case, as he was the last person seen talking with the victim just prior to this homicide. Finally, Deputy Tanisha Washington testified regarding a shooting on 1136 Marshall Drive on June 23, 2014, approximately fifteen days before this murder. The ballistics evidence indicated the victim's residence was the intended target of that shooting. Jene Rauch, who was stipulated to as an expert in firearm and toolmark examination, testified that the .40 caliber casings recovered from the June 23, 2014 shooting and from the murder in this case had been fired from the same weapon. Dejah Lee, the driver of the vehicle defendant was riding in at the time of the murder, identified defendant as the shooter, thus placing him in possession of the gun used in both shooting incidents. Ashley Nash, Johnell's girlfriend, further bolstered this evidence when she testified that for two months leading up to the murder she consistently saw defendant with the same black handgun while he was staying at her house.

The testimony of Detective Nicki Garnier also supported the State's theory of revenge between rival gang associates. Detective Garnier testified that defendant was known to him from prior patrols of the "Scotsdale/Pailet area," a "territory" controlled by members of the Harvey Hustlers. While Detective Garnier admitted that he could not state whether defendant was a member of the Harvey Hustlers, he confirmed that defendant was in close association with established members of the gang, having seen him on multiple occasions in their company. In particular, Detective Garnier testified that he observed defendant at parties attended by members of the Harvey Hustlers, including Melvin Hudson, who had been indicted by the Federal Government for crimes committed in connection with the Harvey Hustlers. Detective Garnier also testified that Medric Ashe, defendant's step-father and a documented member of the Harvey Hustlers, was also in close association with Hudson.

On appeal, defendant complains that the admission of this gang-related testimony and prior incidents of violence constitute reversible error, having been admitted for the sole purpose of portraying defendant "in the worst possible light," to prove that he was a man of bad character and, thus, acted in conformity therewith.

Evidence of gang affiliation is admissible to show the motive for a defendant's actions that caused injury or death to a victim, who is a member of a rival gang. Williams, supra; State v. Weatherspoon, 06–539 (La.App. 5 Cir. 12/12/06), 948 So.2d 215, writ denied, 07–0462 (La. 10/12/07), 965 So.2d 398; State v. Gray, 14–1213 (La.App. 4 Cir. 11/25/15), 179 So.3d 936; State v. Sumlin, 44,806 (La.App. 2 Cir. 10/28/09), 25 So.3d 931, writ denied, 09–2738 (La. 11/19/10), 49 So.3d 400; State v. Brown, 42,054 (La.App. 2 Cir. 08/29/07), 965 So.2d 580, 588, writ denied, 07–1939 (La. 02/15/08), 976 So.2d 174; State v. Gibson, 99–2827 (La.App. 4 Cir. 04/11/01), 785 So.2d 213, 221, writ denied, 01–1458 (La. 04/19/02), 813 So.2d 418.

Defendant was convicted of second degree murder of Stefan Johnson, in violation of La. R.S. 14:30.1. Under that statute, second degree murder is defined as the killing of a human being when the offender: 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm. State v. Lewis, 05–170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589–590, writ denied, 06–757 (La. 12/15/06), 944 So.2d 1277.

 According to the jury instructions, the State prosecuted this case as a specific intent murder. Thus, the State had to prove that defendant had the specific intent to kill or inflict great bodily harm. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Durand, 07–4 (La.App. 5 Cir. 06/26/07), 963 So.2d 1028, 1034, writ denied, 07–1545 (La. 01/25/08), 973 So.2d 753.

The State's theory was that this drive-by shooting was an act of revenge for earlier altercations between the rival gangs, and more specifically, a prior attempt on defendant's life as a result of his gang affiliation or association. Thus, the gang-related references and four specific incidents of prior shooting violence between the two gangs in the time period leading up to the homicide were relevant to show defendant's motive of specific intent to injure the victim, an associate of a rival ⌊₁₄gang member, in this case.[8] Therefore, the admission of other crimes evidence was proper.

 Even assuming evidence of defendant's gang affiliation or association was improperly admitted, reference to evidence of other bad acts is subject to the harmless error rule. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Williams, 833 So.2d at 508. The State presented the testimony of the driver of the vehicle, Ms. Lee, who testified that defendant opened the door of her vehicle and fired several shots directly at the victim while she was driving. Specific intent to kill may be in-

---

8. While the evidence of the September 15, 2013 shooting outside of defendant's residence is not Prieur evidence because it pertains to a prior bad act committed by someone other than defendant, it nonetheless is relevant to establish a motive of revenge and to explain the subsequent shootings which took place leading up to the homicide.

ferred from the act of pointing a gun and firing at a person in close proximity. See State v. Lewis, 09–1404 (La. 10/22/10), 48 So.3d 1073, 1076; State v. Bright, 98–0398 (La. 04/11/00), 776 So.2d 1134, 1141; State v. Tassin, 536 So.2d 402, 411 (La. 1988). Considering this evidence, it could not be said that the testimony that defendant was affiliated or associated with various members of the Harvey Hustlers contributed to his guilty verdict.

Thus, for the reasons stated above, defendant's second assignment of error is without merit.

**Errors Patent Review**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990), and no errors patent in this case were found.

**Conclusion**

Accordingly, for the reasons stated herein, we affirm defendant's conviction and sentence.

**CONVICTION AND SENTENCE AFFIRMED**